FILED

APR 21 2022

Clerk of the Appellate Courts
Rec'd By

IN THE SUPREME COURT OF TENNESSEE
SPECIAL WORKERS' COMPENSATION APPEALS PANEL
AT JACKSON
Assigned on Briefs December 13, 2021

**FREDERICK RUSSELL v. ALUMA-FORM, INC., ET AL.**

**Appeal from the Court of Workers' Compensation Claims
No. 2019-08-0191    Amber E. Luttrell, Judge**

**No. W2021-00717-SC-R3-WC – Mailed March 18, 2022**

Employee Frederick Russell was working for Employer Aluma-Form, Inc. in January 2018 when he sustained an injury to his left shoulder and neck. He reported the injury and received treatment from an orthopedic specialist whose conservative approach to his case included an MRI, an EMG, physical therapy, and referrals to a neurosurgeon and a pain management specialist. Though Employee reported continued pain despite these efforts, his medical providers opined that they could find no objective basis for his reported symptoms and believed them unrelated to his work injury. Employee later sought treatment from a different, unauthorized orthopedic specialist who performed surgery on his shoulder and thereby discovered and repaired a previously undiagnosed torn labrum. Employee sought compensation, and after considering the proof, the Court of Workers' Compensation Claims held that Employee had established that his injury was caused by his workplace incident, that Employer was liable for his medical expenses including those incurred for unauthorized treatment, and that Employee was entitled to both permanent partial disability benefits and temporary total disability benefits. Employer appealed, arguing that the trial court erred on all three issues. The appeal has been referred to the Special Workers' Compensation Appeals Panel for consideration and a report of findings of fact and conclusions of law pursuant to Tennessee Supreme Court Rule 51. We affirm the judgment.

**Tenn. Code Ann. § 50-6-225(a)(1) (Supp. 2021) Appeal as of Right;
Judgment of the Court of Workers' Compensation Claims Affirmed**

ROBERT E. LEE DAVIES, SR. J., delivered the opinion of the court in which HOLLY KIRBY, J., and DON R. ASH, SR. J., joined.

R. Scott McCullough, Memphis, Tennessee, for the appellants, Aluma-Form, Inc. and American Compensation Ins. Co.

Christopher L. Taylor, Memphis, Tennessee, for the appellee, Frederick Russell

## OPINION

### Factual and Procedural Background

At the time of trial, Employee Frederick Russell was a 45-year-old man who lived with his wife and three children in Olive Branch, Mississippi. He graduated from high school and, some years later, completed a two-year degree in electronic engineering technology. Prior to his employment with Aluma-Form, Mr. Russell worked as a forklift operator, packer, stocker, and quality control inspector for various companies. In November 2012, he went to work for Employer Aluma-Form as an assembly technician building insulators. On January 17, 2018, Mr. Russell was pulling a 300-lb. loaded basket on a rolling cart when the wheel of the cart jammed, causing his left arm to jerk up to the left side of his neck and injuring his left shoulder and arm. Mr. Russell testified that he had never had problems with his left shoulder and arm prior to the incident;[1] however, after this injury, he experienced severe pain, difficulty walking, and numbness in his fingers. Following Aluma-Form's protocol, Mr. Russell repeatedly reported the incident to his immediate supervisor and asked him to complete a report so that Mr. Russell could obtain medical treatment. His supervisor did not complete the report as requested but told Mr. Russell to report the matter himself. Mr. Russell contacted Aluma-Form's safety manager, who in turn referred him to Nova Medical Center. There, Dr. James Escue diagnosed Mr. Russell with sprained ligaments in his cervical spine, an unspecified injury of the muscles and tendons of the rotator cuff of his left shoulder, and traumatic arthropathy of his left elbow. Dr. Escue prescribed medication and referred Mr. Russell to physical therapy and an orthopedic specialist.

---

[1] Aluma-Form attempted to impeach Mr. Russell's testimony on this point during cross-examination, introducing medical records documenting treatment Mr. Russell had sought before his workplace incident. The trial court found that those records were irrelevant based on a mistaken conclusion that they did not mention prior shoulder treatment. That mistake has little bearing on the validity of the trial court's decision to generally credit Mr. Russell's testimony as corroborated by that of his wife, as discussed *infra*.

Aluma-Form then provided a panel of orthopedic clinics. After consulting with his wife, who was a nurse, Mr. Russell selected Memphis Orthopaedic Group from the panel and specified that he wanted to see Dr. Christopher Pokabla, a physician who his wife knew was a part of that group. The next day, Mr. Russell received an angry phone call from Aluma-Form's insurance adjuster informing him that he could not pick a particular physician but instead had to resubmit his request, selecting only a practice group. Mr. Russell complied and again selected Memphis Orthopaedic Group. Loretta Smith, the insurer's nurse case manager, later informed him that he had an appointment with Dr. Riley Jones of Memphis Orthopaedic Group.

Dr. Jones examined Mr. Russell on February 28, 2018. At the evaluation, Mr. Russell had normal x-rays and positive Spurling's, Speed's and O'Brien's tests.[2] Dr. Jones recognized that several things could have caused Mr. Russell's symptoms and that treatment possibilities included both surgical and nonsurgical options; accordingly, he opted for a conservative approach by putting Mr. Russell on sedentary duty, ordering MRIs of the cervical spine and shoulder and an EMG of both upper extremities, and prescribing medications and injections.

Approximately a month later, Mr. Russell saw Dr. Jones to review his test results. The MRI of the cervical spine showed a small syrinx and spondylosis,[3] while the shoulder MRI and EMG appeared normal. Based on those results, Dr. Jones did not see any objective indication of a labral tear and did not believe shoulder surgery was necessary. Instead, Dr. Jones referred Mr. Russell to neurosurgeon Dr. John Brophy for further evaluation of the syrinx. Dr. Brophy noted that the syrinx was unrelated to Mr. Russell's workplace injury and offered him the opportunity to pursue additional diagnostic measures through his personal insurance. Dr. Brophy cleared Mr. Russell to return to work without restrictions.

Dr. Jones saw Mr. Russell again in late April 2018. Noting that Mr. Russell's complaints were out of proportion to any objective findings, Dr. Jones recommended that he begin physical therapy. In mid-May, Mr. Russell saw Dr. Jones a fourth time, with little change in either his reported symptoms or Dr. Jones's findings. Dr. Jones's last appointment with Mr. Russell occurred on May 23, 2018; at that time, Dr. Jones noted that

---

[2] While all three tests are subjective, a positive Spurling's test can indicate nerve root impingment at the neck, a positive Speed's test can indicate irritation in the biceps tendon, and a positive O'Brien's test can indicate structural damage to the shoulder, including a labral tear.

[3] A syrinx is a developed (i.e., non-traumatic) fluid-filled area in the spine, while spondylosis is essentially arthritis of the spine.

the examination yielded nothing beyond complaints of pain with no objective findings in support of those complaints. Dr. Jones prescribed Gabapentin, told Mr. Russell and his wife that there was nothing further he could do, and referred him to Dr. Matthew Kangas for pain management.

Dr. Kangas saw Mr. Russell four times in the summer of 2018. Dr. Kangas took him off work for a short amount of time before returning him to light duty and submitted a medial branch block for utilization review. Dr. Kangas noted that some of Mr. Russell's left shoulder pain could be neurological and referred him back to Dr. Brophy. At an appointment on July 16, 2018, Dr. Brophy told Mr. Russell that his ongoing problems were unrelated to his work injury and informed him that additional measures would have to proceed through his personal insurance. When Mr. and Mrs. Russell responded that they believed the symptoms were related to the incident and planned to seek other opinions, Dr. Brophy angrily informed him that "Your Workers' Comp is done, it's over, they ain't paying for nothing else, you're done." Dr. Brophy again approved Mr. Russell to return to work at full duty.

Mr. Russell's next appointment with Dr. Kangas, set for August 2, 2018, was cancelled due to the birth of Dr. Kangas's child, and that appointment was later moved to August 16, 2018. On August 2, 2018, nurse case manager Loretta Carson informed Mr. Russell that Dr. Kangas agreed with Dr. Brophy's assessment that he could return to work at full duty, but had noted that a medial branch block remained a possibility. Four days later, Mr. Russell returned to work at full duty and experienced sharp pain, which he again reported to Aluma-Form's safety officer. The safety officer sent him home and called Loretta Carson. Mr. Russell testified that the safety officer then called him and said "I talked to your case manager, Loretta Carson, at State Auto, and she informed me to tell you to go on to your own primary doctor and go ahead and use your personal insurance and also go to Dr. Kangas under your insurance because Workers' Comp is not paying for nothing else, it wasn't work related." Four days after that, Mr. Russell learned that the medial branch block had been denied, but that Dr. Kangas had appealed. Based on his beliefs that Dr. Kangas was solely a Workers' Comp. doctor and that Dr. Kangas agreed with Dr. Brophy that any further treatment would have to be on his personal insurance, Mr. Russell cancelled the August 16, 2018 appointment with Dr. Kangas and declined offers to reschedule it.

Mr. Russell then sought additional treatment on his own, and testified that Aluma-Form was aware that he was doing so. After various referrals, he began treating with orthopedic surgeon Dr. Apurva Dalal on December 27, 2018. Following an initial evaluation, Dr. Dalal made a preliminary diagnosis of cervical spondylosis, osteoarthritis

- 4 -

of the shoulder, impingement syndrome, and acute left shoulder pain due to a work-related injury; he also took Mr. Russell off of work. Dr. Dalal ordered an MRI, which yielded the same normal results as the prior MRI ordered by Dr. Jones. Unlike Dr. Jones, however, Dr. Dalal recommended surgery to determine whether Mr. Russell might have a need for shoulder repair that did not show up on the MRI.

Dr. Dalal performed that surgery on February 26, 2019, during which he discovered and repaired a torn labrum in Mr. Russell's shoulder. After surgery, Mr. Russell experienced some improvement, noting he felt 90% better in his shoulder, but he continued to see Dr. Dalal over the next several months for physical therapy and treatment for his other conditions (i.e., osteoarthritis, biceps tendinitis, ulnar neuropathy, and carpal tunnel syndrome). Dr. Dalal determined that despite ongoing shoulder pain, Mr. Russell was at maximum medical improvement and discharged him on June 5, 2019.

Later that summer, Mr. Russell returned to Dr. Dalal for an impairment rating. Dr. Dalal initially assigned him an impairment rating of 17% to his left upper extremity, which amounted to a 10% percent rating for the whole body. He also opined that Mr. Russell will need continuous medical care and will likely have permanent problems requiring permanent job restrictions and that it was 80% likely that his shoulder problems were caused by his workplace injury. On cross-examination, Dr. Dalal modified his impairment rating to 14% for the left upper extremity but vacillated between an 8% and 10% whole body rating.

In March of the following year, Mr. Russell returned to Dr. Jones for an independent medical examination and impairment rating. Dr. Jones assigned a 6% impairment rating to the upper extremity, which yielded a whole body impairment rating of 4%. Dr. Jones testified that while all of his treatment had been reasonably related to Mr. Russell's work injury, he had seen no objective evidence of a labral tear. He stated that, had Mr. Russell returned to him, he likely would have done an MRI arthrogram, "because that shows up these tears. Labral tears are, you know, weird." As of the date of trial, Mr. Russell had not been able to return to work.

The case was tried on March 29, 2021. Mr. Russell, his wife Philisa Russell, and nurse case manager Loretta Carson testified at trial, while Dr. Jones and Dr. Dalal testified by deposition. The court took the case under advisement, and on April 28, 2021, it entered a Compensation Order detailing findings of fact and conclusions of law. The court found that Mr. Russell had proven causation for his shoulder injury and was entitled to workers' compensation benefits. The court awarded him $11,879.49 in permanent partial disability benefits based on Dr. Jones's 4% impairment rating, along with $9,308.86 in temporary

- 5 -

disability benefits. The court further held that Mr. Russell's attorney was entitled to a 20% fee plus costs. Finally, the court ordered Aluma-Form and/or its carrier to satisfy Mr. Russell's medical expenses related to Dr. Dalal's treatment and to provide medical benefits for future treatment for his shoulder injury.

On appeal, Aluma-Form raises eight overlapping issues; for the sake of brevity and clarity, we will address the parties' arguments under three broad headings:

1) Whether Employee established causation between his claimed injury and his employment;
2) Whether Employer is liable for Dr. Dalal's unauthorized treatment; and,
3) Whether Employee refused Dr. Kangas's authorized treatment.

## Standard of Review

Review of factual issues is de novo upon the record of the trial court, accompanied by a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-225(a)(2) (2014 & Supp. 2021). When the trial court has seen and heard the witnesses, considerable deference must be afforded the trial court's factual findings. Tryon v. Saturn Corp., 254 S.W.3d 321, 327 (Tenn. 2008). No similar deference need be afforded the trial court's findings based upon documentary evidence such as depositions. Glisson v. Mohon Int'l, Inc./Campbell Ray, 185 S.W.3d 348, 353 (Tenn. 2006). Similarly, reviewing courts afford no presumption of correctness to a trial court's conclusions of law. Seiber v. Reeves Logging, 284 S.W.3d 294, 298 (Tenn. 2009).

## Analysis

### I. Causation

As with all the elements of his claim, Employee has the burden of proving causation by a preponderance of the evidence. Tenn. Code. Ann. § 50-6-239(c)(6) (2014, Supp. 2021). "'Except in the most obvious, simple and routine cases,' a claimant must establish by expert medical evidence the causal relationship between the claimed injury and the employment activity." Cloyd v. Hartco Flooring Co., 274 S.W.3d 638, 643 (Tenn. 2008) (quoting Orman v. Williams Sonoma, Inc., 803 S.W.2d 672, 676 (Tenn. 1991)). The opinion of an authorized treating physician "shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence[.]" Tenn. Code Ann. § 50-6-102(14)(E) (Supp. 2021). When presented with conflicting

- 6 -

medical opinions, "it is within the discretion of the trial judge to conclude that the opinion of certain experts should be accepted over that of other experts and that [the accepted opinion] contains the more probable explanation." Thomas v. Aetna Life & Cas. Co., 812 S.W.2d 278, 283 (Tenn. 1991) (quoting Hinson v. Wal-Mart Stores, Inc., 654 S.W.2d 675, 676-77 (Tenn. 1983)). In exercising that discretion, the trial judge may consider other evidence before the court, including the lay testimony of an employee or a member of an employee's family. See, e.g., Joiner v. United Parcel Serv., Inc., No. M2018-01876-SC-R3-WC, 2019 WL 6652096 at *4 (Special Workers' Comp. App. Panel December 6, 2019); Harlow v. Love's Travel Stops & Country Stores, Inc., No. E2018-01905-SC-R3-WC, 2019 WL 5109644 at *8 (Special Workers' Comp. App. Panel October 14, 2019).

The parties sharply dispute whether Dr. Jones's opinions are entitled to the statutory presumption of correctness based on the circumstances surrounding his selection.[4] However, because the trial court concluded that Employee had successfully rebutted that presumption even if it was present, we need not address the selection issue and instead proceed directly to consider whether Employee established causation by a preponderance of the evidence.

Employer argues that Employee cannot prove that his labral tear was caused by the workplace incident because Dr. Dalal discovered it over a year later, while Dr. Jones, who examined and treated Employee shortly after the incident, repeatedly testified that he did not see a labral tear. On this point, Employer relies heavily on McCall v. Ferrell, No. W2018-01676-SC-WCM-WC, 2020 WL 369849 (Special Workers' Comp. App. Panel Jan. 22, 2020). There, the panel affirmed the trial court's finding that the Employee had not established causation because Dr. Jones definitively testified that the injury in question had not been present at the time and would have shown up on the tests if it had been. Id. *5.

Here, the trial court recognized that Dr. Jones's testimony was equivocal and arguably inconsistent. Though Dr. Jones never saw a labral tear, he acknowledged that it was a possibility and reported that, had he seen Employee again, he would have ordered an MRI arthrogram that would have likely shown the very injury that Dr. Dalal discovered surgically. Unlike in McCall, Dr. Jones never ruled out that Employee had a labral tear; he merely took a more conservative treatment approach that led him to conclude that such

---

[4] We note that although the trial court relied on a version of the regulation that was not in effect at the time of the injury, the regulation that was in effect did not authorize the insurance adjuster to override the Employee's choice of a physician within the practice group or substitute the insurance company's choice.

a tear was unlikely. Given that Dr. Dalal took a more aggressive approach and testified that he'd actually found a traumatic labral tear, the trial court reasonably credited Dr. Dalal's opinion over that of Dr. Jones. Moreover, Employer's attempts to impeach Dr. Dalal's credibility based on his insurance coding practices or his mistaken impairment rating fail to move the needle with regard to causation.

Similarly, the trial court apparently credited the live witness testimony of Employee and his wife despite Employer's introducing prior medical records to suggest that any shoulder problems predated the workplace incident. That factual finding warrants considerable deference, and, when coupled with Dr. Dalal's credible expert testimony, it provides a sufficient basis for us to conclude that Employee has carried his burden to prove causation and rebut any presumption in favor of Dr. Jones's opinion to the contrary.

## II. Unauthorized Treatment

We next consider Employer's arguments that the trial court erred in ordering it to pay for Employee's medical treatment from Dr. Dalal. Employer contends that treatment was unreasonable and unnecessary, as well as unauthorized because Employee did not consult Employer prior to obtaining it. As discussed above, the trial court was entitled to credit Dr. Dalal's testimony over that of Dr. Jones, and because Dr. Dalal testified that his treatment was reasonable and necessary, we will not disturb the trial court's finding on that point.

As for the issue of unauthorized treatment and/or failure to consult, Employer cites Bain v. UTI Integrated Logistics, LLC, No. W2018-00840-SC-WCM-WC, 2019 WL 5258151 (Special Workers' Comp. App. Panel Oct. 16, 2019), which recounted that an employee who is dissatisfied with the services of a physician provided by the employer generally has three options: 1) move the court to appoint a neutral physician, 2) consult with the employer and make other arrangements, or 3) go to an unauthorized physician without consulting the employer and be liable for such services. Id. *6. *Bain* further noted that "Whether an employee is justified in seeking additional medical services to be paid by employer without consulting him depends on the circumstances of each case." Id.

While the clear weight of authority suggests that awarding costs for unauthorized treatment based on justified circumstances ought to be quite rare, *see, e.g.,* Taylor v. Airgas Mid-South, Inc., No. W2012-00621-WC-R3-WC, 2013 WL 704095, *4 (Special Workers' Comp. App. Panel Feb. 26, 2013), that authority also makes clear that justification is a question of fact best answered by the trial court. Id. *6. Here, the evidence does not preponderate against the trial court's conclusion that Employee's actions were justified.

- 8 -

As Employee and his wife testified, he did not seek unauthorized treatment before he'd been told that there was little more that all three authorized doctors could do. Two of those doctors had told Employee that his Workers' Comp. was done, and Employer's safety manager directly told him to seek additional care on his own insurance. We also note that Employee kept Employer informed of his actions. Under these circumstances, we cannot say that Employer has overcome the presumption of correctness that accompanies the trial court's ruling that Employee's actions were justified in light of the statements made by Employer's agents and authorized providers.

### III. Refusal

Finally, Employer argues that the trial court erred in awarding Temporary Total Disability benefits based on the period of Dr. Dalal's treatment because Employee's right to compensation had been suspended based on his August 16, 2018 refusal of authorized treatment from Dr. Kangas. Employer correctly observes that Tenn. Code. Ann. § 50-6-204(d)(8) authorizes such a suspension, but the statute does so only when "the injured employee refuses to comply with any reasonable request for examination or to accept the medical or specialized medical services that the employer is required to furnish." The facts in this record show no such refusal, as the court credited Employee's testimony that he cancelled his appointment with Dr. Kangas and did not reschedule it only because he understood that Dr. Kangas had agreed with Dr. Brophy that his Workers' Comp. wouldn't cover any more treatment and that any additional treatment would have to be paid for by his own insurance. Employee was then directed to return to work without restrictions. The only outstanding service offered by Dr. Kangas (beyond mere office visits) was a medial branch block, which had been denied by a utilization review. Employee only canceled his appointment and declined offers to reschedule it after he learned of the denial. Accordingly, we reject Employer's assertion that Employee's right to compensation had been suspended and affirm the trial court's award of TTD benefits.

### Conclusion

For the foregoing reasons, the judgment of the Court of Workers' Compensation Claims is affirmed. Costs of the appeal are taxed to the Appellants, Aluma-Form, Inc. and American Compensation Insurance Company, for which execution may issue if necessary.

ROBERT E. LEE DAVIES, SR. J.

- 9 -

# IN THE SUPREME COURT OF TENNESSEE
## SPECIAL WORKERS' COMPENSATION APPEALS PANEL
## AT JACKSON

## FREDERICK RUSSELL v. ALUMA-FORM INC. ET AL.

### Appeal from the Court of Workers' Compensation Claims
### No. 2019-08-0191

No. W2021-00717-SC-R3-WC

FILED
APR 21 2022
Clerk of the Appellate Courts
Rec'd By

## JUDGMENT ORDER

This case is before the Court upon the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference.

Whereupon, it appears to the Court that the Memorandum Opinion of the Panel should be accepted and approved; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court.

Costs are assessed to the Appellants, Aluma-Form, Inc. and American Compensation Insurance Company, for which execution may issue if necessary.

**It is so ORDERED.**

## PER CURIAM